IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TAMMY M. BIRMINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 11-G-2713-J |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Tammy M. Birmingham, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability benefits. Plaintiff timely pursued and exhausted the administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)(4).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Cynthia Weaver determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," her impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 50].  The ALJ found that the plaintiff retains the residual functional capacity to perform light work[1] and as such, can perform her past relevant work as a cashier/checker, deliverer/courier, and payroll clerk.  [R. 17]. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

---

[1] The ALJ's residual functional capacity finding detailed the following restrictions:

> . . . except sit/stand/walk six out of eight hours day [sic] (each), sit/stand option, no manipulative limitations, no sensory limitations, no heavy machinery, occasional stairs, never, ropes, scaffolds, ladders, no communicative limitations, avoid concentrated, heat, cold, humidity, and be able to be off task 10% of the day.

[R. 15].

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS
## FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the

Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 42 years old at the time of the ALJ's decision. The ALJ found the plaintiff has the following severe impairments: L4-L5 disc bulge with radiculopathy, degenerative disc disease in both knees, vitamin B-12 and D deficiencies,

7

and gastritis. [R. 12].  She found that the plaintiff could perform light work with the certain restrictions detailed above, and that she could perform her past work as a cashier/checker, deliverer/courier, and payroll clerk. [R. 15, 17].

Claude Osula, M.D.,[2] has treated the plaintiff since August 2005 for insomnia, back and leg pain, vitamin deficiencies, joint pain, headaches, mild prepyloric gastritis, a small sliding-type hiatal hernia, and possible mild gastroparesis.  On April 18, 2008, Dr. Osula sent her for MRI studies of both knees and her lumbar spine because of her complaints of bilateral knee pain, low back pain and sciatica.  The MRI of the right knee showed a small amount of fluid in the knee joint, prepatellar bursitis, chondromalacia[3] of the patella, disc degeneration involving the posterior horn of the medial meniscus, and a possible ACL sprain. [R. 270].  Similarly, the MRI of the left knee revealed chondromalacia of the patella, and a probable ACL strain. [R. 272].  The MRI of the plaintiff's lumbar spine showed a broad based disc herniation at the L4 level eccentric in a right paracentral and right lateral distribution, which appeared to impinge on the right exiting nerve root. [R. 269].  The plaintiff received epidural steroid injections, but did not get much relief.

---

[2] Dr. Osula is board certified in internal medicine. [R. 643].

[3] Chondromalacia is a softening of the articular cartilage, most frequently in the patella, evidenced by "pain and crepitus over the anterior aspect of the knee, particularly in flexion, with softening of the cartilage on the articular surface of the patella and, in later stages, effusion." Dorland's Illustrated Medical Dictionary 321 (28th Edition).

At the hearing, the plaintiff testified that years ago she had vascular bypass surgery for blood clots in both legs. [R. 42-43]. She testified that she is still having knee and back problems, despite having multiple cortisone shots in her knees and multiple epidural steroid injections in her lower back. [R. 41]. She estimated that her daily pain was "usually around an eight [on a zero to 10 scale] if it's not raining. If it's raining, then it's bad, it's between a ten." [R. 42]. The plaintiff also testified that she experiences "bad swelling" in her legs and that she has trouble sleeping at night because of the pain. Id.

One week after the ALJ hearing, the plaintiff's attorney at the time, Don Bevill, took the deposition of Dr. Osula. A representative of the Commissioner was not at the deposition. Dr. Osula testified, "in general her main problem is related to a chronic pain syndrome relating mostly to back pain and lower extremity pains in the knees and legs." [R. 643-644]. Dr. Osula testified that she also has migraines. [R. 644]. His prognosis:

> Well, it doesn't look good. She has had this pain ongoing for a long time and she has had multiple treatments, has had epidurals several times, has seen the orthopedic doctor, has had physical therapy and also medications and still continues to be symptomatic.

Id. Dr. Osula was told that the plaintiff testified that her pain was in the "8 to 10" range, and was asked whether he agreed with that assessment. Dr. Osula replied, "Not all the time, but there are times" when her pain would be an eight out of 10. [R. 645]. Dr. Osula thought that activity would increase her pain. [R. 646]. He testified that her problems with her legs would cause her to have severe weakness and fatigue, and in his opinion,

her pain would prevent her from working. [R. 647].  When asked whether the plaintiff's complaints of pain were credible, Dr. Osula replied affirmatively, "She does have MRI findings that support also a reason for the pain, although her pain is multifactorial." [R. 648].  He said, "[I]t seems as if rest is the thing that gives her the best relief. . . .". Id.  Dr. Osula thought that "she would have a hard time working." [R. 650].  Dr. Osula testified that he did not think that her condition would improve with time. [R. 650-651].

        In her opinion, the ALJ considered Dr. Osula's opinion:

> Non-controlling weight is given to the deposition opinion of Dr. Osula that the claimant's pain and condition would prevent the claimant from performing work activities.  The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming the opinion.  The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  The course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled.  It is also noted that the doctor's own reports did not reflect his opinion that the claimant is disabled.  It was not until his deposition was taken by the claimant's representative in connection with this application that he stated that the claimant would have a hard time working and that her impairments would prevent her from performing work activities.

[R. 17].

        The ALJ's reasons for rejecting the testimony and opinion of the plaintiff's treating physician are not supported by substantial evidence.  Dr. Osula specifically noted that the MRI findings[4] support an underlying condition which could reasonably be expected to produce the plaintiff's pain and symptoms, "although her pain is

---

[4] As stated earlier, an MRI of the lumbar spine showed a broad based disc herniation at the L4 level eccentric in a right paracentral and right lateral distribution, which appeared to impinge on the right exiting nerve root. [R. 269].

multifactorial." [R. 648]. Additionally, during treatment, Dr. Osula noted that her "lumbar paraspinal" [sic] was tender, and a SLR test[5] performed on the plaintiff was positive. [R. 188]. Dr. Osula's opinion is not "quite conclusory," as characterized by the ALJ, but is based on his own treatment notes and his four-year doctor/patient relationship with the plaintiff.

Moreover, the medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding

---

[5] A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5) The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

the legitimacy of the claims that come before him in his <u>private or personal capacity</u>;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).  The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings."  <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ failed to properly refute the opinion of the plaintiff's treating physician, Dr. Osula.  At the ALJ hearing, the vocational expert testified that a person with the plaintiff's limitations as diagnosed by Dr. Osula could not perform any job that exists in the national economy. [R. 48].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  <u>Id.</u>

DONE and ORDERED 25 April 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.